Before we begin our proceedings this morning, I have a motion to offer, so I will turn it over to Judge Newman to recognize me, hopefully. I recognize the Chief Judge and invite her to make an appropriate motion with respect to Ms. Oliver. Let me begin by moving the admission of Angela Oliver, who is a member of the Bar and is in good standing with the highest courts of Texas. I have knowledge of her credentials and am satisfied, more than satisfied, that she possesses the necessary qualifications. Let me just say a few words, if I may. Firstly, go Baylor, because Angela is celebrating today, because she's an alumni of Baylor, so she's celebrating the victory last night of the women's basketball team. And secondly, just let me say that, you know, I've said this before, what mixed blessings we have as circuit court judges, because we hire the best and the brightest, at least clerks like Angela, far exceed our wildest expectations, and then when they prove themselves to be the kind of person we'd love to be with us permanently, they leave. So it's bittersweet. A little sweeter for me is that Angela, after much lobbying, and her husband have decided, at least for the time being, to remain in Washington. So we're really happy about that. Angela has been just a superb clerk. She came to me from Judge Gilstrap in E.D. Texas, and before that she had been a student of one of my former clerks, David Taylor at SMU. So we've got a lot of history and common ground, and it's just been a delight to have her in Chambers, and I'm sure she will be successful in every respect, and I welcome her to the bar. Welcome to the bar now. We shall vote on the motion. Judge Stoll, what is your vote? I fully support the motion. And the movement, we assume, supports her own motion, and I support the motion. So the motion is granted. Now, will you approach the bailiff to administer the oath? Angela, please raise your right hand. Do you solemnly swear or affirm that you will comport yourself in the terms and accounts of this court, and that you will support the Constitution of the United States of America? I do. Welcome to the bar of the United States Court of Appeals. Congratulations, and thank you for everything. Welcome to the bar. First case this morning for argument is 18-1462, Belspar Sourcing v. PPG. Mr. Bala? Baluch. Baluch. Good morning, and may it please the court. The USPTO committed a pure legal error at this court review's de novo. The USPTO interpreted this court's mandate as foreseen. We all know about the case, so let me just get into it before your time expires. Is it your view that when the board, the chief judge of the board, did what she did, she was either, one, following what she felt she was compelled to do under their regulations, or was she sitting there and really trying to interpret what this court intended? I think the former. I think on page 10 of the appendix, that judge, Judge Bonilla Wright, states that the federal circuit did not remand the proceeding to the board for another decision. The agency was not— So you think it's the latter. I would have thought you had said the latter, like all she was—she's not compelled to do anything, but she was trying to ascertain what our court intended when we remanded it, no? Well, yes. Recall that this all happened sua sponte when Judge Robertson, APJ Robertson, issued a couple-sentence order saying the board decision is vacated, therefore the rand comes back without any Bancorp analysis or other legal analysis. Was this—go ahead. Was this done—what's the timeframe on this? Was all of this done after the time had—did you file a petition for rehearing in this case? I can't remember. Not a petition for rehearing in this order. Okay, but had the time expired when you're filing a petition for rehearing by the time this happened? It did. The sua sponte order by the board came on June 2017. This court's mandate issued on March 2017. So, yes, all of this—we were surprised in the absence of any remand that sua sponte, the board takes up the case and then reinstitutes the right of appeal notice. Can I understand what you understand to be the scope of the mandate, I guess? Your thought would be that the PTO would look at it. They would see that the decision was vacated, but there was no remand, so that would be the end of it, and then the inter-parties reexamination proceedings would just be concluded? Exactly. As the PTO? Yes, which is how all of the D.C. Circuit cases that have the same formulation that this court's mandate had. What do you think is the best case in support of your view? Several. Well, for different reasons, but we have the Bancorp Supreme Court case itself that says vacatur. Vacatur is what clears the path for future relitigation, rather than, as PPG seems to believe, that Munsing Ware requires not only vacating the final agency decision, but also vacating all of the non-final agency decisions plus a remand with instructions to dismiss. And Bancorp says vacatur clears the path. And Justice Scalia wrote the Bancorp decision when he was a member of the D.C. Circuit bench. He authored the Radiophone case, in which he said that all members of the court are in agreement that this case is moot and that we must vacate the agency's order pursuant to Munsing Ware and Meckling Barge. The final sentence of Radiophone dismisses the petitions for review and vacates the declaratory ruling under review. Can I ask you two? I guess I have two questions. One is, why do we care and why are we here? And I'll ask your friend that as well. I mean, they've got a covenant not to sue on these patents. Have these patents been asserted by you against other defendants in other venues? These two patents in these reexaminations have not been asserted by us against anyone, and they enjoy a covenant not to sue. We believe that their continued participation and eagerness to see these patents get canceled points to what I think is their endgame, which is some kind of issue-preclusive effect that would apply. So you've got other patents. The argument would be that there are a lot of other patents out there that you own and that they're similar. So is that your incentive here, that even if you're never going to use the patents here that have for now been invalidated, you think that might have some collateral effect on your assertion of other patents, either against your friend here or against other people? We believe these two patents have value because we can assert them against other parties, not against PPG, but against other parties. But we strongly believe that even if these two patents are canceled in the reexamination, there would not be an issue-preclusive effect against the five other patents, at least because... So that all suggests that this isn't really that important. For us, well... For you. For us, it's important because we don't want our two patents to be canceled. But you don't perceive that they would necessarily, the cancellation of these patents would necessarily have a preclusive effect on further litigation on similar patents? Or is that your worry? I mean, you're allowed to worry. We are worried. We're on pins and needles. The publication of a certificate-canceling claims will have preclusive effect on those patents and prevent us from getting any reissued claims, et cetera. Okay. Let me ask you one other... You also have to worry about the legal issue. You have to fight some other battle related to your patents having this cancellation, right? I mean, even if you were to prevail in some sort of argument that your cancellation of your claims here doesn't impact the validity of your claims in other patents, you still might have a legal battle on that. Is that correct? I think so, yes. I just want to know, is that one of your concerns, just to allay any of those potential issues with respect to other related patents? Well, we don't think they're... As we cite the restatement seconds of judgments to say that there is not going to be issue preclusion against those other patents, but we think these two patents can still be asserted against parties other than PPG. But aren't we overcomplicating the issue? I just wonder why it should be relevant in this case, whether or not there are fallback patents somewheres that haven't come into the case. Isn't it simply, it seems to me, a straightforward question of when we issue a decision and say vacated, what that means? That's something that for which there are decades of precedent as to what it means. Exactly. In looking back, retrospectively, it was a non-presidential opinion, but perhaps it was incomplete in not saying, therefore, the underlying decision of the board is also vacated. But that has all sorts of powerful implications if we take that position in this case that haven't, I think, ever been explored and that, in fact, I have long felt was a gap in the American Vents Act. I think they just ran out of steam after 10 years of trying to enact that statute and left these undecided areas. But now here we are. So our decision will, in fact, I think, have implications if we say the board's opinion, we say we've already held it's vacated. Therefore, the underlying examiner's decision is also vacated, will have all sorts of fallout implications that aren't really explored here. Is this something you think we need to figure out? I don't think so. I think, Your Honor, you're correct that this is a simple issue and it comes down to two sentences really at appendix page 12 that is the board's reasoning that because the board's decision is vacated, the status of the claims in this inter-parties re-examination proceeding is the status of the claims prior to the board's decision. Accordingly, claims 1 through 112 stand rejected as set forth in the right of appeal notice. This is a misapplication of the vacature doctrine. They are replacing the vacated board decision that was favorable to patentability with the new decision of the examiner unfavorable to patentability and they're believing that they are simply executing this court's mandate. Who's got what authority to do what? We've got a board opinion here before us. So we have authority to tell the board. What is it we're supposed to tell the board? You, board, go back and tell the patent office that they have to do this. Who's got authority to do what here? What we are seeking is a reversal of the board's denial of our Rule 41.3 petitions. Our Rule 41.3 petitions sought from the chief judge to vacate and terminate the proceeding and to undo the re-examinations. Do they have the authority to do that? Yes, they do. The board. Yes, we think so. We think so. We think the inter-party re-examination, and I see I'm into my rebuttal, but the inter-party re-examination is an integrated proceeding where there's an examiner phase and the board phase and that's all treated as the re-examination. And the board speaks for the agency as a whole as to that proceeding. So we have plenary authority and de novo review to interpret our own mandate and say what we meant. Yes. And so you would have us say what was vacature. We didn't intend the examiner's rejection would stand or something to that effect. Yes. And then the board figures out what the proper procedure would be or do we go further? You're asking for more than that. You're asking for us to tell the board to tell the PTO what to do. The board is part of the PTO, so it's not the board telling the PTO. Well, the other, the examining court. Right. Which operates under the direction of the director, right? Yes, but it could be either way. Somebody at the agency ought to shut this down or just leave. They should have just done nothing. They could have left the, they could have entered this court's mandate and decision into the record and just not touched it. Indeed, when we look at the D.C. Circuit cases that apply the same formulation of the mandate as this court, we don't see any further agency proceeding. But don't you think the agency has to do something, even if they were to do what you think they should have done? Yes. There's something hanging out there where there's an agency action. I don't know enough about the rules here that if the examiner issues a, is it called a man or whatever, that if it's never reviewed or whatever, if it's automatically effectuated, if there's nothing saying to stop it. I don't know what the answer is. And so our petition sought an order from the board saying that, we're ordering the re-examination to be terminated. So you think that even under our decision as you read it, it would have still, the board would have still had to do something? That would have been the better course for the agency to do. Yes. Under MPEP 2694, it explains the ways that a re-examination can be ended. The most normal one is the publication of a re-examination certificate on the merits, but they clearly say that you can vacate the re-examination proceeding or terminate the re-examination proceeding. And in these instances, no re-examination certificate is issued. Who's the we? Who's the you in that sentence? You can vacate? The agency is vacating. Truly, we're approaching the agency as this integrated body. And while it is true that you receive the board decision and you review the board decision, the Walling case says that you render a disposition of the entire case. And that includes eliminating the entire agency proceedings of any preclusive effect. Which case were you referring to? The Supreme Court's Walling decision. You're saying that gives us authority to terminate the entire re-examination proceeding? Yes. Yes, we do. It is a disposition of the whole case. You agree, don't you, that this is a little bit of a rare circumstance because it's not going to happen in an IPR, for example, where there is no examiner action left hanging. There's only the board's decision, right? I could see a vacature of the final written decision being interpreted incorrectly, as the agency did here, to say, oh, well, the Federal Circuit did not also vacate the institution decision. So the institution decision stands and we can go forward. That's a bit more absurd. Do you know of any case where we've ever done that? I mean, there are two ways we could go here. We could have just been silent or we could say they misconstrued us. But to avoid this in hindsight, what would we have had to say that we're vacating the board's decision and order the Patent Office to wipe out the re-exam? We think the mandate was written perfectly consistently with Radiophone and the other D.C. Circuit cases. We are not seeking modification of the mandate by inserting the reinstatement of the right of appeal notice, as the agency and PPG have done. But perhaps to dispel any doubt, perhaps it would have been more clear if the mandate had said, and we remand with instructions to dismiss the re-examinations. Well, there's no question that this Court would have had the power to do that, other than thinking this went without saying because there was no remand. And the IOP states that the Court will remand only when there is something more for the trial court or agency to do. There was no remand. Therefore, it follows that there was nothing more that this Court thought. But you're saying by necessity there was something more to do at the agency because somebody had to do something with this outstanding examiner? No. The examiner's decision stood reversed by the PTAB in the prior appeal. Yeah, but isn't it normal? We have that a lot. And if the reversing decision is wiped out, then the underlying decision that it reversed resurrects itself normally in our types of cases, right? I don't think so because the vacature in the IOP states that the Court will vacate all or part of a judgment, order, or agency decision when it is being eliminated but not replaced with a contrary judgment or order of this Court. So to bring back the right of appeal notice, rejections would be replacing the vacated board decision with a contrary judgment. Okay. It's not your fault. It's ours. But we've far exceeded all of your time. So we'll restore some rebellion on the other side. Thank you very much. I'm very interested in knowing why you're here, why you continue to have an interest. Your Honor, you may recall from the earlier appeal that even after the covenant was provided by Falspar, we argued that this Court retained jurisdiction and we urged the Court to go ahead and decide that appeal. And we did that and we quoted to the Court numerous instances in which Falspar, in this parallel litigation that involves continuations of the same patents that are involved here, was arguing to the District Court that the Board's decision supports the validity of their claims. No, I think we understand why you would have not, if they were going to moot out this appeal, why you would have wanted to get rid of the Board decision. I guess I understand that. Yes. The question is what's your stake in getting rid of the examiner's decision and why do you think that's consistent with what this Court did when it was reviewing the circumstances it had before it? Because our concern is that, as we have argued in the earlier case, the Supreme Court in the Cardinal Chemical case recognized that even vacated decisions can have an impact on later cases. That's what we saw happening here. So your interest was, and if you're going to wipe it out, wipe it all out. Exactly. That doesn't answer, I don't think, I think it gets to what Judge Stoll's point is. You didn't want this bad Board decision coming to haunt you in other cases. Fair enough. But why are we here fighting over whether or not the re-exam should have issued? Well, we think that, we obviously felt that the Board's decision was wrong. It's been vacated. We think we're entitled to the Patent Office's decision saying that these should prevent any future effect that they will have in other litigation. Okay. So you're arguing that the examiner's decision should stand. Well, I think that... Because why? I mean, you've got a covenant not to sue, so what is your rationale? Do you want to be able to rely on it with respect to other patents? We want to be able to use it to rebut any argument that we hear from the other side that somehow this vacated Board decision still has some persuasive value. And we think the Patent Office did the right thing here. We think the Patent Office followed this Court's mandate precisely. And we haven't seen any argument that there was any ambiguity about this. Well, the mandate said it was vacated. It didn't say either restore, reinstate, preserve, or cancel. You know, I'd like to get into that, Your Honor, because I think this is really the key to the whole case. And if I may, what we see in the briefing is that Balanced Bar primarily relies on the Munsingware case, the Supreme Court case, and that line of cases, including the Alvarez v. Smith case and the Meckling-Barge case, which applied it to agency actions. In each of those cases, the Supreme Court, after finding that the case had become moot, vacated the underlying decision and remanded to the lower tribunal with instructions to dismiss. And that was the established practice that was announced first in the Munsingware case. And when, you know, Balanced Bar argues in its brief that Munsingware says this clears the way for future litigation or it doesn't prejudice the parties. But if you read Munsingware carefully, what Munsingware says is that established procedure of vacating coupled with a remand with instructions to dismiss is what clears the way for future litigation. But if we are ignoring all of the cases which don't go that far, which say vacated, and the consequences of the vacature? Your Honor, the Radiophone case and the D.C. Circuit cases that Mr. Baluch has referred to were cases in which there was only one lower decision. And so all the court had to do in that case, once it found there was a lack of jurisdiction, was to dismiss that underlying decision. None of them were like this case, where the underlying decision... I don't think that's a fair statement. I'm sorry? I don't think that's a fair statement. I think part of the situation is that one can find precedent for any of these procedures. And what's necessary is to decide in a particular case where you have an administrative agency that makes a decision, and then you have an administrative board that reviews that decision, and then a federal court that reviews the administrative board. And meanwhile, you have all sorts of interactions and covenants not to sue and I don't know what else, which affect the relationship between the parties, what, in fact, is the appropriate posture in terms of what happens along the line. We know, for example, that unlike most cases here, the decision under the American Vents Act, the estoppel, applies only between the parties. At the same time, we have a situation where the office is authorized to issue a certificate canceling claims. This then goes beyond the relationship between the parties. There are all sorts of unresolved conflicts that we are getting into in trying to discern the legislative intent and to interpret the statute in accordance with the legislative purpose and be interested in your guidance on these complexities which are raised here because in the decision, all that happened was that it was vacated. You're saying that automatically retains what has happened below. Well, what was vacated here was a decision favorable to Valspar that was itself an appellate decision. And there was that appellate decision reversed an underlying patent office decision which, as the patent vice chief judge pointed out, was a final rejection of the patent office which became... Suppose the examiner had gone the other way and sustained the patent. Are we now saying that that, too, now becomes a raven in stone? Works in estoppel not only between these parties but everyone else? Or only when it's invalidated? The Bancorp case stands for the proposition that a party cannot unilaterally take action to deprive a court of jurisdiction and in doing so erase a judgment that was adverse to it. What they're doing is they're trying to erase the decision that was the final rejection of the patent office which became the only decision of the patent office once the board's decision was vacated. What is your authority for the position that Bancorp also goes further to say, and they also get punished. They're also going to have any decision below that was not favorable to them remain because they mooted the opportunity for an appeal. The court in Bancorp said that when a party unilaterally... clearing the path for new litigation, you think it also supports the idea that the examiner's rejection should stand? Well, I don't see that the patent office had a choice here, to be honest with you. Can I back up for a minute? I just want to ask you, do we have de novo power to interpret our own mandate? The court has de novo power to interpret its own mandate. I do not believe the court has the power at this point to alter that mandate by including in it what in form and effect would be a new remand to the board with instructions to dismiss the reexaminations. If that was going to be done... Just for a minute, I want to ask you another question. Now, if we are of the view, just hypothetically, if we're of the view that our remand, because it actually just was a vacature and no remand, that it was not intended for the examiner's rejection to stand, then what else has to be done here? What law do you have, if that's how we interpret our mandate, is the natural consequence then that the reexamination is terminated? Your Honor, I'm not sure. I'm a little troubled with the idea that we should be delving into what the subjective intent of the panel was at the time it issued that order. Well, we get to interpret our own... Well, there was a time. So you think we can interpret our own mandate? You can certainly interpret it, but can you change it? That's really the question. Well, that depends on, you have a different view of what you thought the mandate said, and the appellant has a certain view, and you have a different view, right? I don't think there's any dispute about what the mandate said, and no one has pointed to any ambiguity in the mandate. The Patent Office certainly didn't see any ambiguity in it, and when I read the Court's former opinion... Is this what you asked for? Did you ask this Court? I believe that you were the party that asked the Court to vacate the decision of the Board. Is that correct? Yes. Did you ask us to vacate the decision of the Board? Yes or no? I said yes. Okay. But may I explain? I just want to ask one more question. Did you ask us to vacate the decision of the Examiner? Was this your intent when you asked us to vacate the decision of the Board? Here's what we presented to the Court, Your Honor. We submitted, and this is docket entry 41 in the prior appeal. We submitted a request that the Court continue to keep the case and decide it even after this covenant. And in support of that, we pointed out numerous occasions where Valspar was using the Board's decision as a weapon in the parallel district court litigation. So that was our primary request. We ended that by saying the relief least favorable to us is that this Court has the authority to follow the Munsingware established practice of vacating the Board's decision and remanding with instructions to dismiss the reexaminations. We presented that squarely to the Court. The Court didn't do it. They didn't ask for it. And now here we are, a year after, if they had a problem with the Court's mandate, they should have filed a request for rehearing. They should have asked you to reform it. They didn't do that. They come in a year later now and want you to change your mandate. I don't see how anyone can say the Patent Office did not follow the mandate this Court issued. And when I read the Court's opinion in the prior appeal, it relies on Bancorp. And Bancorp said you cannot, by unilateral action, erase the effect of an adverse decision. That's what's being done here. They want to erase what was the final rejection of the Patent Office. And the Court cited Bancorp and the Homburg case as authority for what it said its order was most consonant with justice. And that order was to vacate the Board's decision and not do anything else, no remand, no instructions to dismiss the reexamination. Now, where do we find that in the Court's opinion? We find that in the same paragraph that begins with the Court's observation that Valspar is the one responsible for removing this Court's jurisdiction. And that comes right out of Bancorp. So when I read the Court's decision, and I think when the Patent Office read the Court's decision, it said this is exactly the result the Court intended. Now, whether there was a subjective intent behind that, I don't have any way of knowing. But what I do know is what the Court's order says, and it does not remand, it does not say dismiss the reexamination. It says we're vacating the Board's decision. Well, this is quite a different situation, and that's what makes it perhaps interesting. Because with the covenant not to sue, it's no longer a matter of who wins or loses. It's a matter of depriving the federal system of appellate jurisdiction, so that we now are put back in a situation of an agency decision, which the statute says is appealable, but because it's no longer a case for controversy, can't be appealed. And to think through what the appropriate consequence is, I do think is right and before us, but I think we cannot oversimplify the influences on this result. Well, I understand your point, Your Honor. But we're guided by Supreme Court precedent here that's pretty clear, and everybody knew what it was. The Court knew what it was. Vosbar knew what it was. If they wanted a remand with instructions to dismiss, they should have asked for it. If that's what the Court intended, that's what the Court should have ordered. The Bancorp case has a very, I think, important holding. It says when the appellate decision is vacated, the case stands no differently than it would have if jurisdiction were lacking because the losing party failed to appeal at all. They were entitled to think that since there was a covenant not to sue, it no longer mattered as between these parties whether the claims were valid or not. It was over. There was no longer a dispute between you. So to pursue an inconsequential issue, whether in their briefing to this Court or even now, seems certainly distinctive from the precedent you've been drawing our attention to. There was no longer a controversy in this Court because this is an Article III Court that requires a case or controversy. The patent office, the re-exam in the patent office was not mooted, and the D.C. Circuit case that Mr. Belush cites, the Radiophone case, held that explicitly. And this Court in Consumer Watchdog recognized the different jurisdictional requirements in this Court and the patent office. I mean, presumably this Court... The parties don't care. The office doesn't care. This Court doesn't care. The Board doesn't care. But you're telling us that nonetheless this examiner's action needs to be revived or sustained in which case we haven't gotten to their position that if it is, then they should have the right to appeal it, which they would routinely have had but for all of this intervening mess. If they hadn't decided as a tactical matter to deprive this Court of jurisdiction, then we would have a decision of this Court on whether the Board was right or wrong. They chose a different path. They should suffer the consequences of that choice, and the Bancorp case says when you choose that path, you can't erase an adverse decision. Mr. Figg, I see on page JA4152 where you asked for the vacatur in reliance on Bancorp. I don't see, though, anywhere where you explain any of this. So you instead just asked for vacatur. As I say, Your Honor, we certainly acknowledged that the Court had that authority, and I think it's said even more explicitly in Docket Interim 41, which was our motion for Lee to file a reply letter when they submitted the covenant. That, for some reason, didn't make it into the joint appendix, but it's part of this Court's appeal record. We said it very explicitly that Munsingware lays out. I don't see how Munsingware could have been any clearer, as well as the cases that relied on it. You asked us to vacate the Board's decision, right? And so we did, so that you could have the fairness that you asked for, a clean slate, right? So you're saying in your reply you explained further that we needed to do more or the examiner's decision would stand? No, that was not the issue. That was not the issue. Our main point was we really wanted the case decided, and they pulled the rug out from under us with their covenant. We acknowledged the last sentence of Docket Interim 41 is, Thou spar will not be prejudiced by vacature of the Board's decision and remand with instructions to vacate the decision of the Central Examination Unit. That was sort of, no matter what else you do, you should at least do that. That was our least favorable relief we were asking for. We put squarely in front of the Court exactly the procedure that is required under the Munsingware line of cases. The Court did not do that. They didn't ask the Court to do it, and the Court didn't do it. What's the Patent Office supposed to do? Read a requirement into the Board's mandate that the Court didn't put in its mandate? I mean, the Court didn't tell the Patent Office to dismiss the reexaminations. The Patent Office had not lost jurisdiction over the reexaminations. The Patent Office's procedures say when all appeals are over, then we remand the case to the Commissioner for the Ministerial Act of issuing a reexamination certificate that is consistent with the appellate outcome.  Thank you. Your Honors, while we're on that joint appendix, page 4152, where PPG tells this Court what should be done in light of the covenant not to sue, the first sentence of the first full paragraph concludes with, the PTAB's decision must be vacated. They don't mention anything else, remand or vacating the RAN. And in that paragraph, quote, the Munsingware principle that the rights of all parties are preserved. None is prejudiced by a decision. And then it ends with a citation to the Sands v. NLRB case of the D.C. Circuit. Based on my research, this is the most recent decision of the D.C. Circuit that applies the Meckling-Barge principle in administrative cases. And in that case, you had the National Labor Relations Board sitting atop an ALJ. The ALJ issued a decision dismissing Ms. Sands' unfair labor practices case. That was appealed to the NLRB. The NLRB Board affirmed. And on appeal to the D.C. Circuit, the D.C. Circuit, including on that panel, was Judge Kavanaugh, dismissed the appeal and vacated the Board's order. Only the Board's order was mentioned and no remand. And just so there's no doubt that there would be no preclusive effect of the ALJ's order, Sands v. NLRB at page 786 says that they were doing this procedure to further the traditional doctrine, purpose of the doctrine, quote, clearing the path for future relitigation of the issues. So it would be, it's impossible to square that rationale of the D.C. Circuit with the idea that just vacating the Board NLRB decision does not affect then the ALJ decision. There's other cases that we cite, like Beethoven.com v. The Librarian of Congress, D.C. Circuit case that only vacates the Librarian's decision. The Librarian sits atop the CARP, the Copyright Arbitration Royalty Panel, which had come to a different decision with respect to the copyright royalty effective dates. And likewise, the D.C. Circuit... The patent office means that it should also be vacated. That's your view. That's how you read ours. That's why you didn't have a petition. So we would have to affirmatively, if we wanted to do, if we, the court, wanted to do something different, let's assume in this case we decided, well, we ought to reaffirm the examiner's opinion. We would have to explicitly say that in our opinion? Yes. I think that would be a reversal, because you are replacing the vacated board decision that was favorable to patentability with a contrary judgment of this court or of the agency. A simple reversal would have done the trick. Would you say that in a procedural circumstance like this, if you expected the examiner's rejection to stand, that the court would have been more explicit about it? Yes, absolutely. And just to make a final point, that PPG will have its day in court in an Article III court on the five asserted patents, but they've chosen not to challenge those five patents at the patent office. So they will have their day in court and are having their day in court in the Western District of Pennsylvania on those five patents and will be able to appeal. I was going to ask you about the status of that. Your brief said that you went into mediation at the end of 2018. What is the status? The case continues on those five patents. Discovery is closed. I assume that mediation was not successful. Correct. Discovery is closed. Summary judgment is being briefed.